## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

| | |
|---|---|
| **MICHAEL LOWRY** <br> 1455 Crittenden Mt. Zion Road <br> Dry Ridge, KY, 41035 <br><br> and <br><br> **LOWRY TECHNICAL ASSOCIATES, INC.** <br> 44 Cumings Drive Suite D <br> Walton, KY 41094 <br><br> **Plaintiffs,** <br><br> v. <br><br> **JAMES LEE STACKHOUSE** <br> <u>Serve via Certified Mail:</u> <br> 10333 Logstone Lane <br> Soddy Daisy, TN 37379 <br><br> **LOGAN PRICE** <br> <u>Serve via Certified Mail:</u> <br> 7225 N. Mona Lisa Rd. Ste 200 <br> Tucson, AZ 85741 <br><br> and <br><br> **MORGAN, COHEN & BACH, LLC** <br> <u>Serve via Certified Mail:</u> <br> c/o Registered Agent Aaron Brown <br> 7225 N. Mona Lisa Rd. Ste 200 <br> Tucson, AZ 85741 <br><br> **Defendants.** | **CASE NO.** <br><br> **JUDGE** <br><br> **COMPLAINT WITH JURY DEMAND** |

**COME NOW** Plaintiffs, Michael Lowry ("Mr. Lowry"), and Lowry Technical Associates, Inc. ("LTA") (collectively, the "Plaintiffs"), by and through undersigned counsel, and for their Complaint with Jury Demand against Defendants' James Lee Stackhouse ("Mr. Stackhouse"), Logan Price ("Mr. Price") and Morgan, Cohen & Bach, LLC ("MC&B") (collectively, the "Defendants"), state as follows:

## NATURE OF THE ACTION

1. This is a defamation, harassment, and negligence action arising from false and defamatory statements published initially by Mr. Stackhouse and then republished by Mr. Price, a judgment lien and enforcement officer at MC&B.

2. In short, former LTA employee Mr. Stackhouse falsely represented to MC&B that LTA owed Mr. Stackhouse around $165,126.56. Once MC&B purchased the debt from Mr. Stackhouse, and negligently failed to check if the $165,126.56 debt was legitimate, Mr. Price then communicated false and misleading statements to Mr. Lowry's friends and family members, along with LTA clients, employees, and business associates, asserting that LTA is over $245,015.50 in debt. These accusations are misleading and false.

3. The truth of the matter, as detailed in this Complaint, is that LTA never owed Mr. Stackhouse, or his company Stackhouse Project Solutions, $165,126.56 nor over $245,015.50.

4. To pursue the collection of fraudulent debt, Mr. Price intentionally perpetuated a false narrative about Mr. Lowry and LTA, disseminating it to LTA clients, employees, and business associates. The Defendants' false narrative, among other actions, has caused the Plaintiffs to suffer significant reputational harm and lost business oppourtunities. This lawsuit seeks compensatory and punitive damages accordingly.

## PARTIES, JURISDICTION, AND VENUE

**A.   MICHAEL LOWRY**

5. Mr. Lowry is a natural person, residing in Grant County, Kentucky at 1455 Crittenden Mt. Zion Road, Dry Ridge, Kentucky, 41035.

6. For diversity jurisdiction purposes, Mr. Lowry is a citizen of the Commonwealth of Kentucky.

7. Mr. Lowry is the current owner of LTA.

8. Prior to the statements at issue, Mr. Lowry had a good reputation in the community. As a business owner, Mr. Lowry was known for the quality work that he and

his company would provide. Prior to the statements at issue, Mr. Lowry and LTA were private figures who had not voluntarily thrust themselves into any public controversy, did not occupy positions of pervasive power or influence in the community, and had not otherwise achieved such pervasive fame or notoriety as to become public figures for all purposes.

9. Neither Mr. Lowry nor LTA had assumed any role of special prominence in the affairs of society or in the resolution of public questions prior to the defamatory publications at issue.

**B.    LOWRY TECHNICAL ASSOCIATES, INC.**

10. LTA is a technical management and service corporation organized under the laws of the Commonwealth of Kentucky and registered with the Kentucky Secretary of State Office. The corporation has its principal place of business in Boone County, Kentucky at 44 Cummings Drive, Suite D, Walton, Kentucky 41094.

11. For diversity jurisdiction purposes, LTA is a citizen of the Commonwealth of Kentucky.

**C.    JAMES LEE STACKHOUSE**

12. James Lee Stackhouse is a natural person residing in Hamilton County, Tennessee with a mailing address at 10333 Logstone Lane, Soddy Daisy, Tennessee 37379.

13. Mr. Stackhouse is a former independent contractor of LTA.

14. For diversity jurisdiction purposes, Mr. Stackhouse is a citizen of the State of Tennessee.

**D.    MORGAN, COHEN & BACH, LLC**

15. MC&B is a debt collection limited liability company organized under the laws of the State of Arizona and registered with the Arizona Corporation Commission. MC&B has its principal place of business at 7225 N Mona Lisa Road Suite 200, Tucson, Arizona 85741 in Pima County, Arizona.

16. Aaron Brown ("Mr. Brown") is MC&B's registered agent and operates as a

Manager and Member of MC&B. Mr. Brown resides and is domiciled at 601 E. Vekol Rd. Casa Grande, AZ 85122 in Pinal County, Arizona.

17. Daniel Olivieri ("Mr. Olivieri") operates as a Manager and Member of MC&B. Mr. Oliveri resides and is domiciled at 7776 W. Thelon Ct. Tucson, AZ 85743 in Pima County, Arizona.

18. For diversity jurisdiction purposes, MC&B is a citizen of the State of Arizona.

### E. LOGAN PRICE

19. Mr. Price is a natural person residing in Arizona with a business mailing address at 7225 N Mona Lisa Road Suite 200, Tucson, Arizona 85741 in Pima County, Arizona.

20. Mr. Price is an employee of MC&B.

21. For diversity jurisdiction purposes, Mr. Price is a citizen of the State of Arizona.

### F. JURISDICTION AND VENUE

22. Mr. Lowry is a citizen of the Commonwealth of Kentucky. Mr. Lowry resides and is domiciled in Grant County, Kentucky, which is in the Northern Division at Covington of the Eastern District of Kentucky.

23. LTA is a citizen of the Commonwealth of Kentucky. LTA is domiciled in Boone County, Kentucky, which is in the Northern Division at Covington of the Eastern District of Kentucky.

24. Mr. Stackhouse is a citizen of, resides and is domiciled in the State of Tennessee.

25. Mr. Price is a citizen of, resides and is domiciled in the State of Arizona.

26. MC&B is a citizen of the State of Arizona. MC&B is domiciled in Pima County, Arizona.

27. MC&B's Manager and Member Mr. Brown is a citizen of the State of Arizona. Mr. Brown resides and is domiciled in Pinal County, Arizona.

28. MC&B's Manager and Member Mr. Olivieri is a citizen of the State of Arizona. Mr. Oliveri resides and is domiciled in Pima County, Arizona.

29. Complete diversity exists between the Plaintiffs (Kentucky) and the Defendants, Mr. Stackhouse (Tennessee), Mr. Price (Arizona) and MC&B (Mr. Brown (Arizona), and Mr. Oliveri (Arizona)). The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interests, costs, and attorneys' fees. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

30. This Court has specific jurisdiction over the Defendants pursuant to Kentucky's long arm statute KRS 454.210(2)(c) and (d) and due process requirements of the United States Constitution. As alleged below, the Defendants have purposefully availed themselves of the privilege of acting in Kentucky. The causes of action below arise from and relate to the Defendants' tortious conduct in Kentucky, and the consequences by the Defendants' actions directed towards Kentucky are substantial enough to make the exercise of personal jurisdiction proper.

31. Defendants, as alleged below, published false statements about Kentucky citizens to Kentucky citizens and business. Mr. Stackhouse contacted MC&B regarding the alleged debt a Kentucky business owed him. MC&B employee Mr. Price then contacted at least two Kentucky citizens and residents, John Lowry and Christopher Lowry, regarding the alleged debt owed. John Lowry is a resident of and domiciled in Grant County at 1415 Crittenden Mount Zion Road, Dry Ridge, KY 41035. Christopher Lowry is a resident of and domiciled in Grant County at 1455 Crittenden Mount Zion Road, Dry Ridge, KY 41035.

32. Defendants also contacted at least three businesses associated with the Plaintiffs: Hilmar Cheese Company, PEAC Solutions, and Heritage Bank. Heritage Bank is corporation organized under the Commonwealth of Kentucky, with its principal place of business located at 1818 Florence Pike, P.O. Box 357, Burlington, Kentucky 41005.

33. The Defendants Price and MC&B contacted Kentucky citizens and businesses, all concerning the false statement that the Plaintiffs owe MC&B over

$245,015.50. Defendants Price and MC&B had actual knowledge that the Plaintiffs reside in Kentucky, as they addressed four letters containing the false statements to LTA's mailing address in Walton, Kentucky. Defendants Price and MC&B also affirmatively contacted John and Chris Lowry, whom they knew were associated with the Plaintiffs, and published false statements to these Kentucky citizens. One of the businesses the Defendants Price and MC&B contacted is the Plaintiffs' financial institution Heritage Bank, a Kentucky incorporated company. The above allegations are sufficient to make a prima facie showing of personal jurisdiction over the Defendants.

34. The causes of action alleged herein all arise out of and relate to the Defendants' defamatory statements about Kentucky citizens. By directing and publishing statements to Kentucky citizens and businesses, the Defendants Price and MC&B have purposefully availed themselves of the privilege of acting in Kentucky and causing a consequence in Kentucky. Defendant Stackhouse sought MC&B's services for the repayment of debt allegedly owed by LTA, a Kentucky corporation. Defendant Stackhouse has purposefully availed himself of the privilege of acting in Kentucky and causing a consequence in Kentucky.

35. Venue is proper in the Covington Division pursuant to 28 U.S.C § 1391(b) because the Defendants are subject to personal jurisdiction in this District, and/or a substantial part of the events giving rise to this claim occurred in this District, including but not limited to the contacting businesses and citizens in this District.

36. The Plaintiffs have suffered and continue to suffer damages within the jurisdiction of this Court.

## DETAILED FACTUAL BACKGROUND

G.   **EMPLOYMENT OF JAMES LEE STACKHOUSE**

37. LTA provides a wide array of technical services to clients in consumer products, food and beverage, and pharmaceutical and biotechnological companies. LTA employs independent contractors and employees to work on technical projects for clients' businesses within the aforementioned sectors.

38. Mr. Stackhouse was employed as an independent contractor for LTA until sometime in December 2024.

39. Sometime in August 2022, Mr. Stackhouse began work on 3-year project for the Hilmar Cheese Company (the "Hilmar Project"). Under the Hilmar Project, Mr. Stackhouse was paid an hourly rate of $105 with a $5 pay increase every year he worked on the project. The $5 pay increase would occur on January 1st of the following year.

40. LTA's bill rate with Hilmar Cheese was $155 per hour for LTA service and support. Independent contractors are paid at LTA based upon the number of hours worked, reflected on an invoice, multiplied by the contractor's hourly rate.

41. On or about January 1, 2023, Mr. Stackhouse was given a $5 raise, bringing his hourly rate to $110.

42. On or about November 2023, Mr. Stackhouse formed Stackhouse Project Solutions LLC to work at LTA.

43. Mr. Lowry took over full ownership of LTA from his father, John Lowry, on or about January 1, 2024.

44. On or about January 1, 2024, Mr. Lowry contacted Mr. Stackhouse to see if he would be interested in working in a managerial role at LTA.

45. On or about January 1, 2024, Mr. Lowry and Mr. Stackhouse discussed billing rates for ongoing work and reviewed rates of all LTA staff. This is when Mr. Stackhouse learned that LTA made a total of $155 per hour on the Hilmar Project. Out of the $155 hourly rate, LTA paid Mr. Stackhouse his $110 hourly rate and used the remaining $45 for business operating expenses.

46. Mr. Stackhouse confronted Mr. Lowry about the $45 dollar an hour difference between Mr. Stackhouse's hourly rate and the hourly rate Hilmar Cheese paid LTA for its services.

47. When Mr. Stackhouse asked for a raise, Mr. Lowry approved of the raise, bringing Mr. Stackhouse's hourly total to $125.

48. At no point did Stackhouse ask to retroactively apply his raise to past

invoices, going back to the beginning of Mr. Stackhouse's employment with LTA.

49. At no point did LTA agree to retroactively apply Stackhouse's raise to past invoices, going back to the beginning of Stackhouse's employment with LTA.

50. Sometime after LTA approved of Mr. Stackhouse's raise, Mr. Stackhouse generated Invoice 1030.

51. Invoice 1030 requested retroactive inflation to Stackhouse's hourly rate, plus interest, for every pay period he worked at LTA, amounting to a total of $77,973.00.

52. LTA rejected Invoice 1030 since it did not agree to the retroactive inflation of Mr. Stackhouse's hourly rate.

53. Mr. Stackhouse ceased to work with LTA and Mr. Lowry sometime in December 2024.

### H. STACKHOUSE SOLD A FALSE AMOUNT OF 'DEBT' TO MC&B

54. Sometime between December 2024 and June 2025, Mr. Stackhouse contacted the debt collection agency MC&B regarding past due invoices for work Stackhouse or Stackhouse Project Solutions did for LTA. MC&B bought Mr. Stackhouse's 'debt' and, in this transaction, Mr. Stackhouse made a false statement to MC&B that LTA owed him around $165,126.56. This is false.

55. A part of the 'debt' sold in the transaction between MC&B and Stackhouse contains a valid $87,153.56 outstanding payment based upon Stackhouse's documented work, approved by LTA in Invoices 1020 –1024 and Invoice 1026. The other part of the transaction contains the fraudulent and invalid Invoice 1030, improperly generated by Stackhouse for $77,973.00.

56. At no point during December 2024 and June 2025 did MC&B contact the Plaintiffs to confirm if any invoice provided by Stackhouse were legitimate.

57. On or about June 25, 2025, LTA received a letter regarding the matter "Stackhouse Project Solutions v. Lowry Technical Associates" from MC&B employee James Sullivan ("Sullivan"). The letter stated that LTA owed their "client" $245,015.50 within 5 days.

58. A true and correct copy of the June 25, 2025 letter is attached hereto as **Exhibit A**.

59. On or about June 26, 2025, MC&B sent two letters regarding the matter "Stackhouse Project Solutions v. Lowry Technical Associates." The letter stated that LTA owed their "client" $245,015.50 within 5 days and was signed by MC&B employee Sullivan.

60. True and correct copies of the two June 26, 2025 letters are attached hereto as **Exhibit B**.

61. On or about July 14, 2025, MC&B sent a fourth letter regarding the matter "Stackhouse Project Solutions v. Lowry Technical Associates" from MC&B employee Price. The fourth letter stated that LTA owed their "client" $245,666.95 within 10 days. This fourth letter arbitrarily declared that the amount LTA owed had increased by an additional $651.45, over the span of 18 days since the third letter was sent.

62. A true and correct copy of the July 14, 2025 letter is attached hereto as **Exhibit C**.

63. On or about July 16, 2025, Mr. Price emailed Mr. Lowry regarding an outstanding balance of $245,739.34 allegedly owed to Stackhouse Project Solutions. Mr. Price explained that the total amount owed comprised the principal amount balance, interest, and legally incurred costs, but did not specify how the balance had again increased, now by $72.39 in the span of 2 days.

64. On or about July 16, 2025, Mr. Lowry replied to Mr. Price's email, disputing the $245,739.34 amount owed.

65. On or about July 22, 2025, Price emailed and listed the following outstanding invoices that LTA owed Stackhouse Project Solutions: Invoice 1020 – $19,599.53; Invoice 1021 – $19,056.41; Invoice 1022 – $18,029.88; Invoice 1023 – $12,850.24; Invoice 1024 – $12,015.00; Invoice 1026 – $5,602.50. The subtotal of these invoices equals approximately $87,153.56.

66. In the same July 22, 2025 email, Mr. Price also included Invoice 1030 as an

additional amount that LTA owed. Price explained that Invoice 1030 "outlines hours worked that were not compensated at the correct rate." Price negligently and incorrectly calculated Invoice 1030, in the amount of $77,973.00, as part of the overall amount due without first verifying if that debt was legitimate or accurate. Stackhouse pursued, contracted, or sold a $77,973.00 'debt' to MC&B that is not enforceable against LTA.

67. On or about July 22, 2025, Mr. Lowry confirmed over email to Mr. Price that LTA owed Stackhouse Project Solutions $87,153.56. However, Mr. Lowry firmly denied that LTA owed Stackhouse Project Solutions $77,973.00 in Invoice 1030 because LTA did not agree to retroactively inflate Stackhouse Project Solutions' hourly rate for past completed work. Mr. Lowry also denied that LTA owed MC&B any interest or legally incurred costs that MC&B incurred by pursuing an invalid and unenforceable debt.

68. On or about July 22, 2025, Mr. Lowry confirmed over email to Mr. Price that LTA owed Stackhouse Project Solutions $87,153.56. However, Mr. Lowry firmly denied that LTA owed Stackhouse Project Solutions $77,973.00 in Invoice 1030 because it is a fraudulent invoice.

## I. PRICE CONTACTS LTA CLIENTS AND BUSINESS ASSOCIATES

69. On or about July 24, 2025, Mr. Price emailed Mr. Lowry explaining he had "spoken with other contractors" regarding the debt collection, adding the contractors he spoke to "remain unpaid." Mr. Price admitted to Mr. Lowry that he had contacted LTA employees about the false accusation that the Plaintiffs owed a debt of around $245,666.95.

70. By contacting LTA employees, Mr. Price has negligently spread false and defamatory statements about Mr. Lowry and LTA, hurting the reputation of Mr. Lowry and LTA's reputation in their trade or profession.

71. On or about August 4, 2025, Mr. Price emailed Mr. Lowry again to inform him that Price spoke directly with Anthony Gonzalez from Hilmar Cheese about rates set in the Hilmar Project. Price admitted to Mr. Lowry that he contacted LTA clients. Price concluded the email implying commercial litigation is in the future and asked for the

Plaintiffs' attorney.

72. True and correct copies of the June 25, 2025 to August 4, 2025 email correspondences between Mr. Lowry and Price are attached hereto as **Exhibit D**.

73. On or about August 7, 2025, the Plaintiffs sent a letter to Defendants Price and MC&B, demanding the immediate cease and desist of contacting the Plaintiffs and the Plaintiffs' friends, family, clients, employees, and business associates. The Plaintiffs explained that Invoice 1030 was fraudulently generated by Stackhouse and there is no legal basis for the Plaintiffs to pay more than approximately $87,153.56.

74. A true and accurate copy of the cease-and-desist letter is attached hereto as **Exhibit E.**

75. Defendants Price and MC&B ignored the cease-and-desist letter, as Defendant Price contacted Mr. Lowry's brother, Christopher Lowry, on August 4, 2025. A true and correct copy of the August 4, 2025 email from Christopher Lowry to Plaintiff Lowry is attached hereto as **Exhibit F**. Defendant Price continued to contact Mr. Lowry's friends and family throughout August 2025 and September 2025.

76. On or about October 3, 2025, Mr. Price emailed Mr. Lowry and PEAC Solutions regarding alleged "significant financial concern involving Michael Mr. Lowry & Lowry Technical Associates." PEAC Solutions operates as LTA's equipment supplier, and the businesses have a significant and longstanding relationship. The entire email paints a false and defamatory narrative that the Plaintiffs are in significant financial trouble with MC&B, which is false.

77. A true and correct copy of the October 3, 2025 email is attached hereto as **Exhibit G.**

78. On or about October 3, 2025, Price emailed Heritage Bank regarding alleged "significant financial concern involving Michael Lowry & Lowry Technical Associates." Heritage Bank operates as LTA's bank. The entire email paints a false and defamatory narrative that the Plaintiffs are in significant financial trouble with MC&B, which is false.

79. A true and correct copy of the October 3, 2025 email is attached hereto as

**Exhibit H.**

80. For over four months, Defendant Price has spread lies about the Plaintiffs. Plaintiff Lowry has felt harassed, annoyed, and alarmed by Defendant Price contacting his friends, family, and business associates. Both Plaintiffs have suffered reputational harm and lost business opportunities within the community.

## CAUSES OF ACTION

### Count 1—Defamation *per se*
### (Alleged Against Defendant Price)

81. The preceding paragraphs are hereby incorporated by reference as if fully realleged herein.

82. Mr. Price's statements are demonstrably false for reasons previously alleged herein. The statements are not "substantially true" because the statements were not a mere "minor inaccuracy." The statements go well beyond a "minor inaccuracy."

83. Price's statements are "of and concerning" the Plaintiffs for the reasons previously alleged herein.

84. Price's statements are capable of a defamatory meaning because, when read and viewed by a reasonable reader in context, the specific accusations tend to, in no particular order:

   (a) subject Mr. Lowry and LTA to reputational harm;

   (b) diminish Mr. Lowry and LTA's standing in the community;

   (c) denigrate Mr. Lowry's fitness for his occupation; and

   (d) denigrate LTA's business practices.

85. Mr. Price's statements are defamatory *per se* because they are defamatory on their face without any reference to outside material; Mr. Price's statements falsely denigrate and injure the Plaintiffs' reputation in their trade or profession.

86. Mr. Price's false narrative contained statements of fact that can be proven either true or false. Mr. Price's false statements are widely inaccurate and false as the Plaintiffs only owe approximately $87,153.56 to Mr. Stackhouse.

87. Mr. Price intended to convey his accusations about the Plaintiffs as statements of fact. Mr. Price did not publish his false statements about Mr. Lowry or LTA as mere parody or opinion.

88. Mr. Price published his false accusations negligently to Mr. Lowry's friends and family and LTA's clients, as previously alleged in this Complaint.

89. Mr. Price's statements were unprivileged.

90. Mr. Price's statements are inherently damaging to the Plaintiffs since the statements falsely denigrate and injure the Plaintiffs' reputation in their trade or profession. The Plaintiffs will continue to suffer reputational harm and lost business opportunities due to Mr. Price's lies.

### Count 2—Defamation *per se*
### (Alleged Against Defendant Stackhouse)

91. The preceding paragraphs are hereby incorporated by reference as if fully realleged herein.

92. Mr. Stackhouse's statements are demonstrably false for the reasons previously alleged herein.

93. Mr. Stackhouse's statements are "of and concerning" the Plaintiffs for the reasons previously alleged herein.

94. Mr. Stackhouse's statements are capable of a defamatory meaning because, when read and viewed by a reasonable reader in context, the specific accusations tend to, in no particular order:

(e) subject Mr. Lowry and LTA to reputational harm;

(f) diminish Mr. Lowry and LTA's standing in the community;

(g) denigrate Mr. Lowry's fitness for his occupation; and

(h) denigrate LTA's business practices.

95. Mr. Stackhouse's statements are defamatory *per se* because they are defamatory on their face without any reference to outside material; Mr. Stackhouse's

statements falsely denigrate and injure the Plaintiffs' reputation in their trade or profession.

96. Stackhouse's false narrative contained statements of fact that can be proven either true or false. Stackhouse intended to convey his accusations about the Plaintiffs as statements of fact. Stackhouse did not publish his false statements about the Plaintiffs as mere parody or opinion.

97. Mr. Stackhouse published his false accusations to employees at MC&B, as previously alleged in this Complaint.

98. Mr. Stackhouse's statements were unprivileged.

99. Mr. Stackhouse's statements are inherently damaging to the Plaintiffs since the statements falsely denigrate and injure the Plaintiffs' reputation in their trade or profession. The Plaintiffs will continue to suffer reputational harm and lost business opportunities due to Mr. Stackhouse's lies.

**Count 3—Harassment (Negligence *Per Se* Under KRS § 446.070)**
**(Plaintiff Lowry Alleged Against Defendant Price)**

100. The preceding paragraphs are hereby incorporated by reference as if fully realleged herein.

101. Defendant Price engaged in Harassment in violation of KRS § 525.070(1)(e) when, with intent to intimidate, harass, annoy, or alarm the Plaintiff, he engaged in a course of conduct which alarms or seriously annoys the Plaintiff, and such conduct serves no legitimate purpose.

102. KRS § 525.070 is penal in nature or provides no inclusive civil remedy.

103. KRS § 446.070 affords a person injured by the violation of any statute to recover from the offender such damages it sustained by reason of the violation.

104. Plaintiff Lowry is within the class of person that KRS § 525.070(1)(e) is intended to protect.

105. Plaintiff Lowry's injuries are the type that KRS § 525.070(1)(e) is designed to prevent.

106. Mr. Price has sent written and electronic communications to Mr. Lowry threatening litigation to recover over $245,015.50 in alleged debt and threatened to assist creditors to shut down Mr. Lowry's business. Mr. Price has also repeatedly communicated with Mr. Lowry and his friends, family, and business associates with the intent to harass, alarm, or seriously annoy Mr. Lowry.

107. As a direct and proximate result of Mr. Price's violation of KRS § 525.070(1)(e), Plaintiff Lowry is entitled to recover compensatory and punitive damages for his injuries, in an amount to be determined by jury at trial.

### Count 4—Harassing Communications
### (Negligence *Per Se* Under KRS § 446.070)
### (Plaintiff Lowry Alleged Against Defendant Price)

108. The preceding paragraphs are hereby incorporated by reference as if fully realleged herein.

109. Defendant Price engaged in Harassing Communications in violation of KRS § 525.080(1)(a) when, with intent to intimidate, harass, annoy, or alarm Plaintiff Lowry, Mr. Price communicated with a person by telephone, telegraph, mail, or other form of electronic or written communication which caused annoyance or alarm, and served no purpose of legitimate communication.

110. KRS § 525.080 is penal in nature or provides no inclusive civil remedy.

111. KRS § 446.070 affords a person injured by the violation of any statute to recover from the offender such damages it sustained by reason of the violation.

112. Mr. Price sent written and electronic communications to Mr. Lowry threatening litigation to recover over $245,015.50 in alleged debt and threatened to assist creditors to shut down Mr. Lowry's business. Mr. Price also copied Mr. Lowry on emails with Heritage Bank and PEAC Equipment.

113. Mr. Price has engaged in a course of conduct that serves no legitimate purpose of communication. Mr. Price has contacted Mr. Lowry, his family members, and business associates that have continued to harass, annoy, and alarm Mr. Lowry.

114. Plaintiff Lowry is within the class of person that KRS § 525.080(1)(a) is intended to protect.

115. Plaintiff Lowry's injuries are the type that KRS § 525.080(1)(a) is designed to prevent.

116. As a direct and proximate result of Mr. Price's violation of KRS § 525.080(1)(a), Plaintiff Lowry is entitled to recover compensatory and punitive damages for his injuries, in an amount to be determined by jury at trial.

### Count 5—Vicarious Liability
### (Plaintiff Lowry Against Defendant Morgan, Cohen & Bach)

117. The preceding paragraphs are hereby incorporated by reference as if fully realleged herein.

118. It is well settled that an employer can be vicariously liable for an employee's tortious conduct if the employee committed the tort within the scope of his employment. *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008).

119. As an employee of the debt collection agency MC&B, Mr. Price ordinarily locates debtors, contacts people, negotiates payments, collects financial information, and maintains records for his employer. Mr. Price acted within the scope of his employment by contacting the Plaintiffs for the collection of debt.

120. When Mr. Price contacted Mr. Lowry's family and LTA's business associates, he represented himself as an employee of Morgan, Cohen & Bach. Mr. Price's pursuit of collecting debt on behalf of his employer is within the scope of his employment.

121. While communicating with Mr. Lowry, his family and business associates, to collect a debt, Mr. Price engaged in a course of conduct designed to harass, annoy, or alarm Mr. Lowry. These repeated communications served no legitimate purpose.

122. Mr. Price violated KRS § 525.070(1)(e) and KRS § 525.080(1)(a) within the scope of his employment.

123. MC&B is vicariously liable for the tortious acts of Mr. Price, one of the company's employees.

### Count 6—Vicarious Liability
**(Alleged Against Defendant Morgan, Cohen & Bach)**

124. The preceding paragraphs are hereby incorporated by reference as if fully realleged herein.

125. An employee's intentional tort can be within the scope of his employment when the intentional conduct is closely related to the employment. *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 57 (Ky. 2008). The employer can be vicariously liable for intentional torts committed by employees when the employee's tortious conduct was done in furtherance of the employer's business. *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005).

126. As an employee of the debt collection agency MC&B, Mr. Price ordinarily locates debtors, contacts people, negotiates payments, collects financial information, and maintains records for his employer. Mr. Price acted within the scope of his employment by contacting the Plaintiffs for the collection of debt.

127. When Mr. Price contacted Mr. Lowry's family and LTA's business associates, he represented himself as an employee of Morgan, Cohen & Bach. Mr. Price's pursuit of collecting debt on behalf of his employer is within the scope of his employment.

128. Mr. Price committed an intentional tort of defamation when he published false and defamatory statements to the Plaintiffs' family members and business associates in the pursuit of collecting debt. Mr. Price committed this intentional tort in furtherance of MC&B's business by contacting people and businesses associated with the Plaintiffs to assist his employer collect outstanding debt.

129. MC&B is vicariously liable for the intentional tortious acts of Mr. Price, one of the company's employees.

**WHEREFORE**, Mr. Lowry and LTA respectfully prays:

(a) That judgment in excess of the jurisdictional minimum of this Court be entered against the Defendants for substantial compensatory damages in an amount to be determined at trial;

(b)  That the Defendants be held liable for the reputational harm they have caused Mr. Lowry and LTA;

(c)  That judgment be entered against the Defendants for compensatory damages in an amount to be determined at trial;

(d)  That judgment be entered against the Defendants for punitive damages in an amount to be determined at trial;

(e)  That Mr. Lowry and LTA recover pre- and post-judgment interest;

(f)  That Mr. Lowry and LTA recover his reasonable attorneys' fees and expenses from the Defendants;

(g)  For trial by jury on all issues so triable;

(h)  That all costs of this action be taxed to the Defendants; and

(i)  That the Court grant all such other and further relief that the Court deems just and proper, including equitable relief.

Respectfully submitted,

 */s/ Todd V. McMurtry*
Todd V. McMurtry (KBA No. 82101)
Patrick N. Grote (KBA No. 96411)
HEMMER WESSELS MCMURTRY PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, KY 41017
Tel: (859) 344-1188
Fax: (859) 578-3869
tmcmurtry@hemmerlaw.com
pgrote@hemmerlaw.com

*Trial Attorneys for Plaintiffs,
Michael Lowry and Lowry Technical Associates*

## JURY DEMAND

Plaintiffs Michael Lowry and Lowry Technical Associates demands trial by jury on all issues so triable.

/s/ *Todd V. McMurtry*
Todd V. McMurtry (KBA No. 82101)
HEMMER WESSELS MCMURTRY PLLC

## INSTRUCTIONS TO THE CLERK

Please serve Defendants with a copy of the summons and Complaint via certified mail to the addresses listed in the caption of this Complaint.

/s/ *Todd V. McMurtry*
Todd V. McMurtry (KBA No. 82101)
HEMMER WESSELS MCMURTRY PLLC