UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

MICHAEL LOWRY, et al.,                )
                                      )
       Plaintiffs,                    )     Civil Action No. 2:25-cv-00160-SCM
                                      )
v.                                    )     **MEMORANDUM ORDER**
                                      )     **AND OPINION**
JAMES LEE STACKHOUSE, et al.,         )
                                      )
       Defendants.                    )
                                      )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Debt collectors are an unpopular bunch.  But unpopular though they may be, debt collectors provide a useful service in our economy.  Problems arise, however, when a debt collector's conduct crosses the line from useful and legitimate to abusive and tortious.  The question here is which side of that line the Defendants' conduct falls on in this case.  The Plaintiffs contend that the Defendants have committed various torts by attempting to collect an arbitrarily inflated debt and by contacting the Plaintiffs' friends, family, and business associates about the putative debt.  The Defendants have moved to dismiss the Plaintiffs' Complaint, arguing that it fails to state a claim for which relief can be granted.  The Defendants are right.  But the Court will nevertheless give the Plaintiffs an opportunity to amend their Complaint because it is conceivable that they could make additional allegations that would make at least some of their claims viable.

## I.    Background

The following facts contain the Plaintiffs' allegations from their Complaint, [Dkt. 1], which the Court must accept as true for the purpose of ruling on the Defendants' Motion to Dismiss.  *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).  The Plaintiffs include Michael Lowry ("Mr. Lowry") and Lowry Technical Associates, Inc. ("LTA").  [Dkt. 1 at 2–3].  Mr. Lowry is the current owner of LTA, which is a technical services company that serves clients in the consumer-products, food-and-beverage, pharmaceutical, and biotechnology industries.  [*Id.* at 2, 6].

Defendant James Lee Stackhouse is a former independent contractor for LTA who worked on a 3-year project in connection with the Hilmar Cheese Company.  [*Id.* at 7].  According to the Plaintiffs, Mr. Stackhouse was paid $105.00 per hour with a $5.00 per hour increase that occurred at the beginning of each successive year.  [*Id.*].  LTA's billing rate with Hilmar Cheese was $155.00 per hour.  [*Id.*].

By 2023, Mr. Stackhouse's hourly rate was $110.00, and in November 2023 he formed Stackhouse Project Solutions LLC to work at LTA.  [*Id.*].  On January 1, 2024, Mr. Stackhouse learned that LTA made $155.00 per hour on the Hilmar Project, and he confronted Mr. Lowry about the $45.00 per hour difference between his rate and LTA's rate.  [*Id.*].  Mr. Lowry then approved a raise for Mr. Stackhouse for $125.00 per hour, but the raise was not retroactive.  [*Id.* at 7–8].  Mr. Stackhouse then generated an invoice claiming that the raise should have been retroactive for an

2

additional $77,973.00, which LTA rejected. [*Id.* at 8]. Mr. Stackhouse stopped working for the Plaintiffs in December 2024. [*Id.*].

Shortly thereafter, between December 2024 and June 2025, Mr. Stackhouse contacted Morgan, Cohen & Bach, LLC ("MC&B")—a debt collection agency—and said that LTA owed him $165,126.56. [*Id.* at 8]. But LTA says that it only owes him $87,153.56. [*Id.*]. MC&B never contacted the Plaintiffs to confirm if the additional invoice for $77,973.00 was legitimate. [*Id.*].

From June 25 to June 26, 2025, LTA received a series of letters from MC&B claiming that LTA owed Mr. Stackhouse the sum of $245,015.50. [*Id.* at 8–9]. Then, on July 14, 2025, an MC&B employee named Logan Price[1] sent LTA a letter claiming $245,666.95 was owed and threatening to file a lawsuit. [*Id.* at 8; Dkt. 1-3, Price Letter, at 1–2]. Two days later, Mr. Price emailed Mr. Lowry to summarize the purported debt of $245,739.34. [Dkt. 1-4, Price Emails, at 8–9]. Mr. Lowry responded that the figure was incorrect. Then on July 21, 2025, Mr. Price replied to further discuss the amount owed. [*Id.* at 7]. The next day, Mr. Price emailed Mr. Lowry with additional details about the debt, and Mr. Lowry replied with a refutation of the exaggerated debt. [*Id.* at 4–6]. On July 24, 2025, Mr. Price emailed Mr. Lowry and said:

> I've since spoken with other contractors who confirmed they were never asked to carry their own insurance—contrary to what has been claimed. I've also learned that several of them remain unpaid. If multiple parties decide to pursue involuntary bankruptcy, I will assist in shutting your business down entirely and ensure that your creditors are paid with the remaining assets and revenue in order. . . . I can no longer delay the

---

[1] According to the Defendants' Motion to Dismiss, "Logan Price" is a pseudonym for an MC&B employee. [Dkt. 6, Mot. to Dismiss, at 2 n.1].

> Commercial Asset, Liability, and Fraud investigation, especially in light of recent information regarding how your company has handled workers' compensation insurance.

[*Id.* at 3–4]. Mr. Lowry then sent two consecutive emails to Mr. Price rejecting the exaggerated debt and claiming that the communications have constituted harassment. [*Id.* at 2–3]. The final email was sent from Mr. Price to Mr. Lowry on August 4, 2025, stating that Mr. Price spoke with an employee of Hilmar Cheese named Anthony Gonzalez who said that he thought that Mr. Stackhouse was making $155.00 an hour. [*Id.* at 1–2]. Mr. Price also noted that Mr. Lowry "may not represent [himself] in commercial litigation." [*Id.* at 2].

According to the Plaintiffs, the Defendants then contacted Christopher Lowry—Mr. Lowry's brother—on August 4, 2025, "regarding the alleged debt owed." [Dkt. 1 at 5, 11]. The email attached to the Complaint, however, says something a little different. It states that Christopher Lowry got a call from Mr. Price asking to "provide information about [LTA] and things that went on in the office," but Christopher Lowry "didn't answer any of his questions." [Dkt. 1-6, Christopher Lowry Email, at 1]. Also, the Plaintiffs allege that Mr. Price "continued to contact Mr. Lowry's friends and family throughout August 2025 and September 2025." [Dkt. 1 at 11]. Mr. Lowry's father, John Lowry, is one of the relatives that Mr. Price allegedly contacted. [*Id.* at 5]. The Plaintiffs then sent a cease-and-desist letter to MC&B and Mr. Price on August 7, 2025. [Dkt. 1-5, Letter to Defendants, at 1].

On October 3, 2025, Mr. Price copied Mr. Lowry on separate emails sent to two of LTA's creditors, PEAC Solutions ("PEAC") and Heritage Bank, Inc. [Dkt. 1 at 11–12]. The emails were substantially identical, claiming that there is "a significant

4

financial concern involving Michael Lowry and [LTA]" and that "[g]iven the gravity of this matter and the potential implications for [the creditors'] interests, it's paramount that" they communicate about the situation. [Dkt. 1-7, PEAC Email, at 1; Dkt. 1-8, Heritage Bank Email, at 1–2]. Mr. Price also noted that the debt-collection attempts "could disrupt the regular business operations of Michael Lowry & Lowry Technical Associates." [*Id.*]. Further, Mr. Price suggested that there could be "[r]eputational [c]onsiderations: Financial matters often lead to public disclosures, potentially influencing the perception of associated entities." [*Id.*].

Plaintiffs LTA and Mr. Lowry then filed a Complaint against Mr. Stackhouse, Mr. Price, and MC&B on October 16, 2025, asserting the following claims: (1) defamation *per se* against Mr. Price; (2) defamation *per se* against Mr. Stackhouse; (3) harassment under Ky. Rev. Stat. §§ 446.070, 525.070(1)(e) against Mr. Price; (4) harassing communications under Ky. Rev. Stat. §§ 446.070, 525.080(1)(a) against Mr. Price; (5) vicarious liability against Defendant MC&B relating to harassment by Mr. Price; and (6) vicarious liability against Defendant MC&B relating to defamation *per se*. [Dkt. 1 at 12–17]. The Defendants filed a Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6), [Dkt. 6 (attacking all claims)], and asserted counterclaims against LTA relating to the alleged debt, [Dkt. 7]. Mr. Stackhouse's company, Stackhouse Project Solutions LLC, then filed a Motion to Intervene, [Dkt. 9], which this Court granted. [Dkt. 20]. The Defendants' Motion to Dismiss has been briefed, [Dkt. 11, Pls.' Resp.; Dkt. 16, Defs.' Reply], and it is now ripe for review.

## II.   Analysis

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *Ohio v. United States*, 849 F.3d 313, 318 (6th Cir. 2017) (quoting *Riverview Health Inst. LLC*, 601 F.3d at 512). "To survive a motion to dismiss, a complaint must present facts that, if accepted as true, sufficiently 'state a claim to relief that is plausible on its face.'" *Coley v. Lucas County*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. No heightened pleading standard applies to defamation claims. *See* Fed. R. Civ. P. 8(a)(2); *Armstrong v. Shirvell*, 596 F. App'x 433, 444 (6th Cir. 2015) ("[The plaintiff] was not required to allege the circumstances of defamation with particularity." (citing Fed. R. Civ. P. 8(a)(2), 9(b))); *Berk v. Choy*, 607 U.S. 187, 194 (2026).

The Court views the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. *Riverview Health*, 601 F.3d at 512. All reasonable inferences are drawn in favor of the plaintiff. *Coley*, 799 F.3d at 537. "The Court need not, however, 'accept the plaintiff's legal conclusions or unwarranted factual inferences as true.'" *Sandmann v. WP Co. LLC*, 401 F. Supp. 3d 781, 787 (E.D.

Ky. 2019) (quoting *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).

Applying this standard, the Court finds that: (1) the Plaintiffs fail to plausibly allege defamation *per se*; (2) both harassment claims must be dismissed; and (3) the vicarious liability claims are improperly pled as independent counts. However, the Court will allow the Plaintiffs to amend their Complaint to the extent they can make additional factual allegations to satisfy the requirements of Rule 8 for the dismissed claims. *See Walker v. Shermeta, Adams, Von Allmen, PC*, 623 F. App'x 764, 768 (6th Cir. 2015) ("[O]rdinarily[,] 'if the requisite allegations are not in the complaint and a motion to dismiss for failure to state a claim upon which relief may be granted is made under Rule 12(b)(6), the pleader should be given the opportunity to amend the complaint, if she can, to show the existence of the missing elements.'" (quoting 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Fed. Prac. & Proc.* § 1216 (3d ed. 2015))).

### A.   The Plaintiffs' defamation *per se* claims are not plausible.

To state a claim for defamation under Kentucky law, a plaintiff must allege: (1) "a false and defamatory statement concerning" the plaintiff; (2) "an unprivileged publication to a third party;" (3) "fault amounting at least to negligence on the part of the publisher; and" (4) "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (quoting Restatement (Second) of Torts § 558 (1977)). A claim of defamation *per se* does not require any proof of special

damages as injury to reputation is presumed because of the words used. *Id.* at 282 (quoting *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 794 (Ky. 2004)).

A defendant's statement is defamatory *per se* if it attributes to the plaintiff "a criminal offense, a loathsome disease, serious sexual misconduct, or conduct which is incompatible with his business, trade, profession, or office." *Gilliam v. Pikeville United Methodist Hosp. of Ky., Inc.*, 215 S.W.3d 56, 61 (Ky. Ct. App. 2006). When the statement involves the plaintiff's business, it is not defamatory *per se* unless it exposes the plaintiff to public hatred, ridicule, contempt, or disgrace, or otherwise impugns the plaintiff's competence, capacity, or fitness to carry out their business. *Sandmann*, 401 F. Supp. 3d at 790 (internal citations omitted) (quoting *Digest Publ'g Co. v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. 1955); *Welch v. Am. Publ'g Co. of Ky.*, 3 S.W.3d 724, 735 (Ky. 1999) (Cooper, J., dissenting)). And ultimately, the statement must tend to harm the plaintiff's reputation by "lower[ing] him in the estimation of the community" or deterring others "from associating or dealing with him." *Andes Roofing, LLC v. Rusnak*, 726 S.W.3d 13, 20 (Ky. Ct. App. 2025) (quoting *Nat'l Coll. of Ky., Inc. v. WAVE Holdings, Inc.*, 536 S.W.3d 218, 222 (Ky. Ct. App. 2017)).

Naturally, truth is an absolute defense to defamation. *Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. Ct. App. 2011). But a plaintiff's defamation claim can survive a motion to dismiss if it plausibly alleges a false statement was made. *Andes Roofing*, 726 S.W.3d at 20 (quoting *Davenport Extreme Pools & Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 158 (Ky. Ct. App. 2024)). This requires the alleged statement to be

"sufficiently factual so that it may be proven false, or the statement must imply underlying facts which are provable as false." *Id.* (quoting *Davenport*, 698 S.W.3d at 158). A substantially true statement with "minor inaccuracies" is not actionable if "the substance, the gist, the sting, of the [defamatory] charge be justified." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (quoting *Heuer v. Kee*, 15 Cal. App. 2d 710, 714 (Cal. Ct. App. 1936)).

It is not enough for a statement to be false though; it must also be unprivileged. *Toler*, 458 S.W.3d at 282. The existence or nonexistence of a privilege is a question of law, *see Farmer v. Baptist Health Med. Grp., Inc.*, __ S.W.3d __, No. 2025-SC-0042-DG, 2026 WL 1839961, at *8 (Ky. June 25, 2026) (citing *Harstad v. Whiteman*, 338 S.W.3d 804, 810–11 (Ky. Ct. App. 2011)), but a complaint must contain sufficient factual allegations for a court to be able to determine that an allegedly defamatory communication is plausibly unprivileged, *see Green v. Mason*, 504 F. Supp. 3d 813, 832 (S.D. Ohio 2020).

There are two types of privileges that potentially apply in a defamation case: absolute and qualified. An absolute privilege is precisely what it sounds like—*i.e.*, it provides a defendant with a complete and absolute defense to a claim of defamation. *Smith*, 331 S.W.3d at 640. A pure opinion, for instance, is absolutely privileged. *See Ramler v. Birkenhauer*, 684 S.W.3d 708, 719 (Ky. Ct. App. 2024); *Toler*, 458 S.W.3d at 282–83 (quoting *Stringer*, 151 S.W.3d at 795); *Maggard v. Kinney*, 576 S.W.3d 559, 567 (Ky. 2019). Statements made in the course of a judicial proceeding—including those made preliminary to a seriously contemplated judicial proceeding—are also

9

absolutely privileged.  *Stilger v. Flint*, 391 S.W.3d 751, 754 (Ky. 2013).  Still other absolute privileges are expressly provided by statute.  *See Smith*, 331 S.W.3d at 640–41.

Qualified privilege, on the other hand, "only affords a defendant a conditional defense to a claim of defamation."  *Id.* at 640.  While absolute privileges are defined by bright-line rules, qualified privileges are less well defined.  Broadly speaking, Kentucky courts have found that qualified privilege applies "where the communication is one in which the party has an interest and it is made to another having a corresponding interest."  *Toler*, 458 S.W.3d at 282 (quoting *Stringer*, 151 S.W.3d at 795).  When qualified privilege applies, a plaintiff can overcome it by showing that the defamatory statement was uttered with malice.  *See Fortney v. Guzman*, 482 S.W.3d 784, 792 (Ky. Ct. App. 2015) (quoting 50 Am. Jur. 2d *Libel & Slander* § 258 (2015)).

When evaluated in light of all these rules, the allegations in the Complaint fail to plausibly allege defamation.

### 1. As alleged, Mr. Stackhouse's statements to MC&B are not actionable.

The Plaintiffs allege that Mr. Stackhouse made a false and defamatory statement regarding their capacity or fitness to carry out their business when he told MC&B that LTA had failed to pay him $165,126.56 for due invoices.  The Defendants contest the adequacy of the allegations in the Complaint, arguing that they are not specific enough, that the alleged statements were true, that the alleged statements were privileged, that the Plaintiffs failed to adequately plead fault amounting to at

least negligence, and that the Plaintiffs failed to adequately plead reputational harm. These arguments are generally unavailing with one significant exception—the argument pertaining to privilege.

First, the Plaintiffs adequately allege that Mr. Stackhouse made a false statement to MC&B—that being that LTA had failed to pay Mr. Stackhouse $165,126.56 for due invoices. The allegations in the complaint are sufficiently specific on this point. Unlike a fraud claim, a defamation claim need not be pled with specificity. *Armstrong*, 596 F. App'x at 444 (citing Fed. R. Civ. P. 8(a)(2), 9(b)). It is enough to allege the gist of what was said and to provide general allegations about when and to whom it was communicated. *See MedChoice Fin., LLC v. ADS All. Data Sys., Inc.*, 857 F. Supp. 2d 665, 673–74 (S.D. Ohio 2012) ("[The counterclaimants] have identified the alleged defamatory statement . . . , the third parties to whom [the counter-defendant] made the alleged statements . . . , and the circumstances in which [the counter-defendant] made the alleged statements . . . . Requiring a higher level of specificity would impose a heightened pleading standard where the Rules do not require one." (citations omitted)). The Complaint does that here, and it also alleges that the statement was false. Of course, the Defendants contest the falsity of Mr. Stackhouse's alleged statement, but that is a matter that cannot be resolved at this stage of the proceedings. The Complaint alleges that the statement at issue was false, and the allegations in the Complaint do not reveal the statement to have been a merely minor inaccuracy. The Complaint has alleged enough to establish the

11

statement's falsity for purposes of evaluating the Defendants' Rule 12 motion. *See id.*

Contrary to the Defendants' argument, the allegedly false statement was not a statement of opinion. An unadorned statement that one owes a debt is a statement of fact. The alleged statement would qualify as a statement of pure opinion if the Complaint said that Mr. Stackhouse had disclosed all relevant facts to MC&B and then told MC&B that, based on those facts, it was Mr. Stackhouse's opinion that LTA had failed to pay a debt that it owed to him. *See Cromity v. Meiners*, 494 S.W.3d 499, 503 (Ky. Ct. App. 2015) ("Pure opinion, which is absolutely privileged, occurs where the commentator states the facts on which the opinion is based, or where both parties to the communication know or assume the exclusive facts on which the comment is clearly based." (quoting *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989))). But that is not what the Complaint alleges occurred in this instance. And at the Rule 12 stage, the Court must accept the facts alleged in the Complaint to be true. *Coley*, 799 F.3d at 537. Those facts adequately allege that Mr. Stackhouse made a false statement to MC&B.

Not only does the Complaint adequately allege a false statement, but the alleged statement is one that can be viewed as defamatory *per se*. Telling a debt collector that a business has failed to pay a debt can be viewed as a statement that one has acted in a manner that is "incompatible with his business, trade, profession, or office." *Gilliam*, 215 S.W.3d at 61. Stated another way, Mr. Stackhouse's alleged statement to MC&B impugns the Plaintiffs' competence, capacity, or fitness to carry

12

out their business, *see Sandmann*, 401 F. Supp. 3d at 790 (quoting *Digest Publ'g Co.*, 284 S.W.2d at 834; *Welch*, 3 S.W.3d at 735 (Cooper, J., dissenting)), because it indicates that they do not satisfy their professional obligations.  Moreover, telling others that one has a bad debt has the tendency to lower one's esteem in the eyes of the community and deter others "from associating or dealing with him."  *Andes Roofing, LLC*, 726 S.W.3d at 20 (quoting *Nat'l Coll. of Ky., Inc.*, 536 S.W.3d at 222). And on top of all this, Kentucky courts have allowed defamation claims based on statements to the effect that a plaintiff has failed to pay a debt.  *See, e.g.*, *Ideal Motor Co. v. Warfield*, 277 S.W. 862, 862–64 (Ky. 1925); *Thompson v. Adelberg & Berman*, 205 S.W. 558, 558–59 (Ky. 1918); *John Brenner Brewing Co. v. McGill*, 62 S.W. 722, 723 (Ky. 1901).

So the Plaintiffs have adequately alleged a false and defamatory statement from Mr. Stackhouse to MC&B.  The problem the Plaintiffs run into, however, is with privilege.  The Defendants assert that both absolute and qualified privileges prevent Mr. Stackhouse's communications with MC&B from being actionable.  While they are wrong about the former, they are correct about the latter.  First, the Complaint gives no basis to believe that the communications from Mr. Stackhouse to MC&B are protected by any absolute privilege.  As explained above, the allegations in the Complaint do not provide any grounds on which to conclude that the statements were statements of opinion.  Nor is there any basis to conclude that any statutory absolute privilege would apply in this instance.  Of course, the Defendants contend that the judicial-statements privilege applies here, but that argument ignores the fact that, at

13

the Rule 12 stage, the Court is limited to reviewing the allegations in the Complaint and must take those allegations as true.  While it is conceivable that the statements from Mr. Stackhouse to MC&B might have been made in serious contemplation of a legal proceeding, the allegations in the Complaint provide no reason to believe that to be so.  It might be a different story if MC&B were a law firm rather than a debt collector, but the very fact that Mr. Stackhouse was communicating with a debt collector instead of a law firm indicates that he was seeking a *non-judicial* means of relief.

While Mr. Stackhouse's alleged statements to MC&B are not covered by any absolute privilege, qualified privilege is a different matter.  It is readily apparent from the face of the Complaint that qualified privilege applies to Mr. Stackhouse's alleged communication with MC&B.

The point of qualified privilege is to create a balance between punishing harmful and blameworthy communications and allowing individuals the freedom to communicate in good faith without fear that they will be punished if they happen to say something that turns out—unbeknownst to them—to be incorrect.  In other words, the animating principle behind the qualified privilege is that "[i]n certain circumstances, . . . otherwise defamatory-per-se communications are allowed because the societal interest in the unrestricted flow of communication is greater than the private interest." *Toler*, 458 S.W.3d at 282 (citing A.G. Harmon, *Defamation in Good Faith:  An Argument for Restating the Defense of Qualified Privilege*, 16 Barry L. Rev. 27, 43 (2011)).

14

Our society rightfully places a high value on the free flow of information. *See, e.g.*, U.S. Const. amend. I. But that can come at a significant cost. For example, reputations can be unjustifiably smeared, wrongdoers can make fraudulent sales pitches, and false-alarmists can induce harmful panic. So qualified privilege aims to mitigate that cost by allowing for the punishment of harmful, low-value speech while protecting higher-value speech. It accomplishes this by providing immunity for situations where one: (1) communicates in good faith; (2) has a good reason to be communicating on a particular subject—*i.e.*, a legitimate "interest" in the subject of the communication; and (3) communicates to another who has a similarly good reason to receive the communication—*i.e.*, the listener has "a corresponding interest." *Toler*, 458 S.W.3d at 282 (quoting *Stringer*, 151 S.W.3d at 795).

The relevant legitimate "interests" to which the privilege applies are not exhaustively defined anywhere in caselaw, but they generally include anything in which there is well-recognized societal or economic utility in the speech at issue. Among the broad array of interests that courts have recognized as falling withing the qualified privilege are those concerning credit and the collection of debts. *See Ideal Motor Co.*, 277 S.W. at 864; *Howard v. Dun & Bradstreet, Inc.*, Nos. 90-5779/90-5780, 1991 WL 59346, at *2 (6th Cir. Apr. 19, 1991) (citing *Ideal Motor Co.*, 277 S.W. at 864); *see also Cortez v. Jo-Ann Stores, Inc.*, 827 N.E.2d 1223, 1233 (Ind. Ct. App. 2005) ("[V]arious communications are protected as privileged, including those between employers and employees, business partners, members of fraternal organizations, creditors and credit agencies." (quoting *Gatto v. St. Richard Sch., Inc.*, 774 N.E.2d

15

914, 925 (Ind. Ct. App. 2002))). So when Mr. Stackhouse allegedly communicated with MC&B regarding the debt that he claimed LTA owed him, he was obviously communicating about a subject in which he had a legitimate "interest." *See Toler*, 458 S.W.3d at 282 (quoting *Stringer*, 151 S.W.3d at 795). And because MC&B is a debt collector that was presumably going to attempt to recover that debt, it had a "corresponding interest." *See id.* (quoting *Stringer*, 151 S.W.3d at 795). Thus, on the face of the Complaint, Mr. Stackhouse's statements to MC&B are subject to the qualified privilege. And that makes sense in light of the purpose behind the qualified privilege. There is significant social and economic utility in creditors' being able to work with debt collectors, and it would unreasonably increase transaction costs and discourage such activity if creditors had to worry about facing tort liability simply for being incorrect in their communications.

But the existence of a legitimate interest on the part of the speaker and a corresponding interest on the part of the listener is not enough. The communication must also be made in good faith to receive immunity under the qualified privilege. "The qualified privilege is just that: qualified. Not an absolute defense, the privilege's protection can be lost through unreasonable actions amounting to abuse." *Id.* at 283. There are a number of ways this can happen, including conduct that amounts to malice. *See id.* at 283–84. Thus, if Mr. Stackhouse had known his statements to MC&B were false but made them anyway, then he would not receive the protection of the qualified privilege. *See id.* The Complaint suggests that this is what happened when it alleges that Mr. Stackhouse sold a "fraudulent and invalid" debt to MC&B.

16

[Dkt. 1 at 8].  But that is really a legal conclusion, and the Court is not required to accept legal conclusions as true.  *Iqbal*, 556 U.S. at 678.  What is needed are factual allegations plausibly showing that the debt was fraudulent, that Mr. Stackhouse knew it to be so, and that he misrepresented it to MC&B as a valid debt despite his knowledge to the contrary.  In other words, the Complaint would have to "plead[] facts that create a plausible inference that [Mr. Stackhouse] acted with malice." *Green*, 504 F. Supp. 3d at 832.  Because no such allegations appear in the Complaint, it fails to state a claim for defamation.

### 2. Mr. Price's alleged statements to Christopher and John Lowry were not defamatory *per se*.

The Plaintiffs' defamation claim related to Mr. Price's statements to Christopher and John Lowry also fails as a matter of law.  The August 4, 2025 email from Christopher Lowry suggests that Mr. Price communicated with him over the phone and asked for information about LTA but received no answers in return.  None of that appears to involve a false statement.  *See Andes Roofing*, 726 S.W.3d at 20. Even if the email could lead to an inference that Mr. Price made some kind of statement during the call, there are insufficient allegations suggesting falsity.  Thus, this alleged phone call does not support a claim for defamation.

For similar reasons, the Plaintiffs fail to allege sufficient factual content in the Complaint to show that a false statement was made to John Lowry.  There are only a few references to John Lowry in the Complaint to begin with, and none mentions any specific false and defamatory statement made to him directly.  [*See* Dkt. 1 at 5,

17

11].  Without more, the Plaintiffs cannot proceed on the basis of communications made to Christopher or John Lowry.

### 3. The Defendants' alleged statements to LTA's creditors and clients were not defamatory *per se*.

The emails to PEAC and Heritage Bank and the alleged communications between Mr. Price and Hilmar Cheese do not contain any false statements.  The PEAC and Heritage Bank emails contain identical messages that claim there is a "significant financial concern" involving the Plaintiffs that is "escalating," could "disrupt" the Plaintiffs' business, and could hurt their "[r]eputation[]."  [Dkt. 1-7 at 1; Dkt. 1-8 at 2].  But neither email mentions a particular amount for the debt, and as the Complaint makes clear, the Plaintiffs do owe a debt of $87,153.56.  [Dkt. 1 at 11].  These emails to PEAC and Heritage Bank are too vague to contain a particular false statement even if they would tend to hurt the Plaintiffs' reputation.  Similarly, the email from Mr. Price about his conversation with Mr. Gonzalez—the Hilmar Cheese employee—does not indicate that Mr. Price made any false statements.  [*Id.* at 10–11; Dkt. 1-4 at 1–2].  Instead, Mr. Price recounts what Mr. Gonzalez told *him* about Hilmar Cheese's understanding of the contract rates.  [Dkt. 1-4 at 1–2].  Any inference about a defamatory statement by Mr. Price to Mr. Gonzalez would be too strained and speculative to survive the Defendants' Motion.  Accordingly, the three emails do not support the Plaintiffs' defamation claims.

### 4. Mr. Price's alleged statements to the Plaintiffs' employees were not defamatory *per se*.

The final basis the Plaintiffs assert for a defamation claim is Mr. Price's communications to the Plaintiffs and their employees regarding the allegedly false

18

debt of $245,666.95. [Dkt. 1 at 8–11]. These allegations are derived from a strained interpretation of one sentence from an email between Mr. Price and Mr. Lowry, [*see* Dkt. 1-4 at 3], and the allegations do not sufficiently plead a claim of defamation *per se*. Merely speaking to "other contractors" who work for the Plaintiffs about what insurance they carry and whether they have been paid does not create a plausible inference that a false and defamatory statement was published. [*See id.* (mentioning the false debt but not in relation to the communications with the Plaintiffs' employees)]. That being said, any statement by Mr. Price to the Plaintiffs' employees would have been published to third parties. It would not make sense to characterize the employees as extensions of the Plaintiffs when the Plaintiffs have an interest in protecting their reputations among employees. *See Toler*, 458 S.W.3d at 282 n.8; *Project44, Inc. v. FourKites, Inc.*, 209 N.E.3d 427, 433 (Ill. App. Ct. 2022). Accordingly, the Plaintiffs' employees are third parties for the purposes of publication, but the alleged communications are too vague to state a claim for defamation.

### B.    The Plaintiffs' harassment claims are also implausible.

Mr. Lowry asserts claims against Mr. Price under two criminal harassment statutes, Ky. Rev. Stat. §§ 525.070(1)(e) and 525.080(1)(a), but neither can survive the Defendants' Motion to Dismiss. Mr. Lowry brings these claims under Ky. Rev. Stat. § 446.070, which provides a private right of action for the violation of a Kentucky statute when: "(1) the statute is penal in nature or provides no civil remedy; (2) the plaintiff is within the class of persons the regulation was intended to protect; and (3) the injury suffered was of the kind the regulation was designed to prevent." *Boswell*

19

*v. United States*, No. 7:23-66-KKC, 2025 WL 898307, at *4 (E.D. Ky. Mar. 24, 2025) (citations omitted).  Kentucky courts have applied § 446.070 to both of the criminal harassment statutes that Lowry relies upon.  *See Hensley v. Gadd*, 560 S.W.3d 516, 527 (Ky. 2018) (Ky. Rev. Stat. § 525.070(1)(e)); *Littrell v. Bosse*, 581 S.W.3d 584, 589 (Ky. Ct. App. 2019) (Ky. Rev. Stat. § 525.080).

A defendant violates § 525.070(1)(e) "when, with intent to intimidate, harass, annoy, or alarm another person, he or she . . . [e]ngages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." *Hensley*, 560 S.W.3d at 527.  This is a catchall provision that potentially covers a wide range of conduct, *see id.*, and it protects individuals from actions that amount to direct harassment, *see McPherson v. Amazon.com Servs., LLC*, No. 3:24-cv-602-RGJ, 2026 WL 908913, at *4–5 (W.D. Ky. Mar. 31, 2026). "[S]imple expressions of dislike, discomfort, uneasiness, or displeasure are insufficient to state a claim" under this provision.  *Montell v. Diversified Clinical Servs., Inc.*, 969 F. Supp. 2d 798, 807 (E.D. Ky. 2013), *rev'd on other grounds*, 757 F.3d 497 (6th Cir. 2014).  Rather, § 525.070's Kentucky Crime Commission/LRC Commentary explains that this offense "is intended to cover those acts which constituted simple assault under prior law" and "conduct which is intended to harass or annoy an individual."

Under § 525.080(1)(a), a defendant commits harassment "when, with intent to intimidate, harass, annoy, or alarm another person, he or she . . . [c]ommunicates with a person, anonymously or otherwise, by telephone, telegraph, mail, or any other

20

form of electronic or written communication in a manner which causes annoyance or alarm and serves no purpose of legitimate communication." Compared to § 525.070(1), this section protects individuals from remote or electronic harassing communications that are directed at them specifically. *See Blessing v. Cable News Network, Inc.*, Nos. 2:20-CV-0015 (WOB-CJS), 2:20-CV-0017 (WOB-CJS), 2:20-CV-0018 (WOB-CJS), 2020 WL 7647530, at *10 (E.D. Ky. Dec. 23, 2020). Calling someone to collect on a debt would typically be a legitimate purpose of communication, but not when the debt is invalid. *See Polis v. Am. Liberty Fin., Inc.*, 237 F. Supp. 2d 681, 689 (S.D. W. Va. 2002) (applying Ky. Rev. Stat. §§ 525.070, 525.080).

The claims under § 525.070 and § 525.080 each fail for a variety of reasons. First, the Complaint lacks sufficient factual allegations to show that Mr. Price acted with the requisite *mens rea*. The Complaint alleges in each claim that Mr. Price acted "with intent to intimidate, harass, annoy, or alarm" Mr. Lowry, [Dkt. 1 at 14, 15], but that is a bare recitation of the *mens rea* element of the claim. And that is not enough. *Iqbal*, 556 U.S. at 678. Without factual allegations plausibly showing that Mr. Price acted with the necessary scienter, the Complaint fails to adequately plead violations of either § 525.070 or § 525.080.

In addition, the conduct at issue here is not the kind of conduct that violates § 525.070(1)(e). The Complaint attaches and incorporates the allegedly harassing communications, which consist of: (1) a letter from Mr. Price to LTA sent on July 14, 2025, and which outlines efforts to collect a debt of $245,666.95, [Dkt. 1-3]; and (2) five emails from July 16 to August 4, 2026, in which Mr. Price claims that he is trying

21

to collect on the false, exaggerated debt and that he will "assist in shutting [Mr. Lowry's] business down entirely." [Dkt. 1-4]. Section 525.070(1)(e) deals with more direct forms of harassment, like those that resemble simple assault, not the kind of contacts at issue here—where only mail and electronic means were used. [*See* Dkt. 1 at 14–16]. Moreover, by receiving these kinds of less direct contacts, Mr. Lowry is not the kind of plaintiff who is protected by § 525.070. So the claim under § 525.070 fails even aside from the lack of factual allegations plausibly establishing the requisite *mens rea.*

The same is true of § 525.080. Of course, as a recipient of allegedly harassing electronic communications,[2] Mr. Lowry is the kind of person protected by § 525.080(a)(1). *See Blessing*, 2020 WL 7647530, at *10. But the allegations nevertheless do not identify conduct that is severe enough to plausibly constitute harassment under § 525.080(a)(1). Fielding a letter and a handful of emails about a debt is not annoying or alarming enough to amount to a violation of that statute. To find otherwise would render tortious—indeed, criminal—all kinds of normal business communications that recipients may find tedious to deal with. The threat to help shut down Mr. Lowry's business comes the closest to harassment, but it was only said once, [Dkt. 1-4 at 3], and Mr. Lowry concedes that LTA owes at least a part of that debt, [Dkt. 1 at 8]. Given that LTA admittedly owes a relatively significant debt, it

---

[2] Note that the letter was addressed to LTA—not Mr. Lowry specifically—so it is not clear that § 525.080(a)(1) protects him due to the lack of a communication directed at him. [*See* Dkt. 1-3 at 1].

22

is impossible to say that this statement "serve[d] no purpose of legitimate communication." Ky. Rev. Stat. § 525.080(1)(a).

**C.    The Plaintiffs' vicarious-liability claims must also be dismissed.**

The Plaintiffs plead vicarious liability as standalone claims against MC&B for the alleged defamation and harassment committed by its employee, Mr. Price.  [Dkt. 1 at 16–17].  Vicarious liability is not an independent cause of action.  *O'Bryan v. Holy See*, 556 F.3d 361, 370 n.1 (6th Cir. 2009).  Rather, it can only be pursued against a defendant as a part of the underlying tort claims.  *See Davis v. Se. Freight Lines, Inc.*, 5:24-cv-262-REW-MAS, 2025 WL 2701287, at *5 (E.D. Ky. Sept. 22, 2025).  The Court has already dismissed the underlying claims asserted against Mr. Price, so both vicarious liability counts must be dismissed in their entirety.  But the Plaintiffs could pursue vicarious liability as part of their underlying claims if they were to amend their Complaint and state plausible theories of recovery.

## III.    Conclusion

The Plaintiffs have failed to plead any claims upon which relief can be granted. But it is conceivable that the Plaintiffs could remedy this with an amended pleading. So the Court will allow the Plaintiffs to file an amended complaint to cure any defects in their claims.  Accordingly, it is hereby **ORDERED** as follows:

1)    The Defendants' Motion to Dismiss for Failure to State a Claim, [Dkt. 6], is **GRANTED**.

2)      The Plaintiffs are granted **LEAVE TO FILE AN AMENDED COMPLAINT WITHIN 14 DAYS** of the date of this Memorandum Order and Opinion.

Signed this 11th day of August, 2026.

S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky